# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| TOM STARRETT, | |
|---|---|
| Plaintiff, | CIVIL ACTION NO. 3:16-cv-02272 |
| v. | (JUDGE CAPUTO) |
| KARIE COE, et al., | (MAGISTRATE JUDGE SAPORITO) |
| Defendants. | |

## **MEMORANDUM**

Presently before the Court is the Report & Recommendation ("R&R") of Magistrate Judge Saporito (Doc. 47), recommending the Court grant summary judgment in favor of Defendants Tyler Moszcienski, David Smith, and Heather Smith on Plaintiff's tort claims, and dismiss Plaintiff's bad-faith claims against Defendants Karie Coe and Allstate Insurance for failure to state a claim. For the reasons stated herein, the recommendations in the R&R will be adopted.

## **I. Background**

The facts as gathered from Plaintiff's multiple filings were summarized by the Magistrate Judge.[1] As neither party has objected to the facts as stated in the R&R, the Court need not repeat them here other than to note the following:

This *pro se* action arises out of an automobile accident which occurred on September 7, 2015 in Cressona, Pennsylvania. Defendant Tyler Moszcienski was the operator of a motor vehicle allegedly responsible for Plaintiff Tom Starrett's injuries. Defendants David and Heather Smith are Moszcienski's parents and policyholders for the automobile liability insurance policy that covered their son's vehicle. Defendant Karie Coe is a claims adjuster for Defendant Allstate Insurance. Coe and Starrett negotiated a

---

[1] As Starrett is proceeding *pro se*, the Magistrate Judge liberally construed the three pleadings (Docs. 7, 8, 12) as a whole. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339-40 (3d Cir. 2011).

settlement and release agreement, which Starrett signed and returned on September 30, 2016. The agreement was entitled "Release of All Claims." (Ex. C, Doc. 46-3.) The release states, in pertinent part, that in consideration of the sum of $13,500, Starrett agreed to:

> [R]elease and forever discharge Dave and Heather Smith and Tyler Moszcienski and any other person, firm or corporation charged or chargeable with responsibility or liability, their heirs, representatives and assigns, from any and all claims, demands, damages, costs, expenses, loss of services, actions and causes of action, arising from any act or occurrence up to the present time and particularly on account of all personal injury, disability, property damages, loss or damages of any kind already sustained or that I may hereafter sustain in consequence of an accident that occurred on or about the 7th day of September, 2015, at or near OAK ST AND FRONT ST, CRESSONA, PA. . . . I [Starrett] further understand . . . that said payments and settlements in compromise is made to terminate further controversy respecting all claims for damages that I have heretofore asserted or that I or my personal representatives might hereafter assert because of said accident.

(*Id.*) Starrett claims that this agreement settled only his "punitive damages," not his "compensatory damages." (Objections 2-3, Doc. 48.)

Starrett originally filed this lawsuit in the United States District Court for the District of Nevada. (Doc. 1.). The district court transferred the action to this district for want of personal jurisdiction over Defendant Moszcienski. Thereafter, Defendants moved to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 38.) The Magistrate Judge noticed his intention to treat Defendants' Motion as a Motion for Summary Judgment under Rule 12(d), in order to consider the release agreement. (Doc. 44.) On June 20, 2017, the Magistrate Judge issued the instant R&R, recommending the Court grant judgment in favor of Defendants Moszcienski and the Smiths on Starrett's tort claims, and dismiss Starrett's bad-faith claims against Defendants Coe and Allstate. (Doc. 47.) On July 7, 2017, Starrett filed objections to the R&R. (Doc. 48.) The matter is now ripe for disposition.

**II. Legal Standard**

When objections to the Magistrate Judge's R&R are filed, the court must conduct a *de novo* review of the contested portions of the Report. *Sample v. Diecks*, 885 F.2d 1099,

2

1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)). However, this applies only to the extent that a party's objections are both timely and specific; if objections are merely "general in nature," the court "need not conduct a *de novo* determination." *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir. 1984). Indeed, the Third Circuit has instructed that "providing a complete *de novo* determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process." *Id.* at 7; *see Martinez v. Astrue*, No. 10-5863, 2011 WL 4974445, at *3 (E.D. Pa. Oct. 19, 2011) ("[O]bjections which merely rehash arguments presented to and considered by a magistrate judge are not entitled to de novo review."). In conducting a *de novo* review, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993).

Although the review is *de novo*, the law permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa.1994). Uncontested portions of the Report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7. At the very least, the court should review uncontested portions for clear error or manifest injustice. *See Cruz v. Chater*, 990 F. Supp. 375, 376–77 (M.D. Pa. 1998). Therefore, the Court reviews the portions of the R&R to which the petitioner objects specifically *de novo*. The remainder of the R&R, and any portion the petitioner objects to generally, is reviewed for clear error.

### III. Discussion

Starrett raises four points of objection to the Magistrate Judge's R&R. Objections one and two appear to contest the Magistrate Judge's finding that Starrett failed to state

3

a cognizable bad-faith claim. (Objections 1-2.) Objections three and four concern the release agreement signed by Starrett, which he claims was for only "punitive damages." (*Id.* at 2.) Starrett appears to use the term "punitive damages" to mean damages for his bodily injuries. (*Id.*) Starrett claims that the agreement reached between him and Allstate did not cover damages resulting from his lost employment income. (*Id.*)

After reviewing Starrett's specific objections to the R&R *de novo* and the remainder for clear error or manifest injustice, the recommendations in the R&R will be adopted.

As to Starrett's first two objections, the Magistrate Judge correctly found that Starrett's claims for bad faith must be dismissed for failure to state a claim.[2] Allstate owed Starrett no duty to negotiate a settlement in good faith. *Brown v. Candelora*, 708 A.2d 104, 108 (Pa. Super. Ct. 1998); *Strutz v. State Farm Mut. Ins. Co.*, 609 A.2d 569, 571 (Pa. Super. Ct. 1992). The Magistrate Judge separately found that Starrett did state a plausible negligence claim, but recommended that judgment be entered in favor of Defendants on this claim due to the valid release agreement in place. Thus, Starrett's contentions that the Magistrate Judge erred in finding that Starrett failed to state a claim with respect to the injuries he suffered in the automobile accident hold no merit. The Magistrate Judge correctly found that Starrett's bad-faith claims are not cognizable under Pennsylvania law, and that his negligence claim, although adequately pled, cannot succeed due to the valid release agreement signed by Starrett.

As to Starrett's last two objections, Starrett reiterates the same arguments that he presented to the Magistrate Judge, namely, that the release was intended to cover only

---

[2] In his objections, Starrett asserts that the Magistrate Judge "misconstrues this action/claim as bad faith." (Objections 3.) However, the first two pleadings filed by Starrett clearly attempt to raise claims of bad faith. (*See* Docs. 7 & 8.) Considering that the Magistrate Judge liberally construed the *pro se* pleadings as a whole, and considering the lack of clarity in Starrett's filings, the Court agrees with the Magistrate Judge that Starrett has asserted claims sounding in bad faith, and therefore it is appropriate to rule on those claims accordingly.

4

damages stemming from his bodily injuries, and thus he maintains claims for other "compensatory damages." Starrett does not dispute the existence of the release agreement or the fact that he received a check for the sum due under the agreement. Additionally, Starrett does not argue that the release was the product of fraud, duress, or mutual mistake. "In Pennsylvania, it is axiomatic that releases are construed according to traditional principles of contract law. A release that is not obtained by fraud, duress, or mutual mistake is binding between the parties. The effect of a release is to be determined by the ordinary meaning of its language." *Black v. Jamison*, 913 A.2d 313, 318 (Pa. Commw. Ct. 2006) (internal citation omitted). Additionally, unilateral mistake generally affords no basis for the rescission of an otherwise valid release. *See Ford Motor Co. v. Buseman*, 954 A.2d 580, 587 (Pa. Super. Ct. 2008).

     Here, the release agreement is a relatively short and straightforward document. Its language is clear, unambiguous, and covers "any and all" of Starrett's claims arising out of the accident as against Dave and Heather Smith, Tyler Moszcienski, and "any other person or corporation charged or chargeable with responsibility or liability[.]" (Ex. C, Doc. 46-3.) Furthermore, Starrett's handwritten notation on the release states, "I Tom Starrett sign above with the knowledge that I will receive $13,500 for settlements of claim 0387027352 ZTR and a check will be sent over night to me for the sum of $13,500 and nothing less." (*Id.*) Starrett also included a handwritten letter to Coe enclosed with the signed release, in which he stated: "I just want to settle. I'm tired of this back and forth. I signed and so did my friend. This is for $13,500 check overnighted to me[.]" (*Id.*) Thus, to the extent there was, in fact, any mistake involved, the record makes clear that such a mistake was due to Starrett's own misconception of the agreement, and was not the fault of Coe or Allstate. Accordingly, the Court finds that the release signed by Starrett is valid and enforceable, and bars Starrett from proceeding on the instant tort

5

claims arising out of the September 7, 2015 accident.³

## IV. Conclusion

For the above stated reasons, the Court adopts the recommendations of the Magistrate Judge in the R&R.

An appropriate order follows.

August 9, 2017
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge

---

³ In assessing the release agreement, the Magistrate Judge relied on cases concerning the waiver of employment discrimination claims. (R&R 8-13 (citing *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 522, 524 (3d Cir. 1988) and *Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir.1988), *superseded by statute as stated in Long v. Sears Roebuck & Co.*, 105 F.3d 1529, 1539 (3d Cir. 1997)).) However, these considerations are unique to such claims due to "the strong policy concerns to eradicate discrimination in employment[.]" *Coventry*, 856 F.2d 522-23. Starrett presents no claims of employment discrimination or, for that matter, any federal civil rights claims. Thus, the Court finds it more appropriate in this diversity action to rely on Pennsylvania law governing release agreements rather than the "totality of the circumstances" test prescribed by the Third Circuit for assessing releases of federal employment discrimination claims.

6